S. HATCH GOULD et al., as the Board of Health, etc., Appellants, *v.* THE CITY OF ROCHESTER, Respondent.

Under the act of 1850 (Chap. 324, Laws of 1850), providing for the organization of boards of health, as amended in 1882 (Chap. 351, Laws of 1882), while the board of health of a town may not summarily execute its orders as to the abatement of a nuisance by going outside of the boundaries of the town for that purpose, it may invoke the aid of the court to restrain a violation of its order and to enforce the abatement of the nuisance, although the cause thereof arises in an adjoining municipality.

It is not essential to the validity of the service of a special order made by a board of health, requiring the abatement of a nuisance, that it be served on the occupant of the premises whereon the nuisance exists, within the territorial jurisdiction of the board; a service outside of the jurisdiction is sufficient.

The city of R. having, under legislative authority, acquired land in the adjoining town of B., and opened ditches thereon to carry off the drainage of the city, dug such ditches and constructed sewers which discharged into the ditches near the boundary between the city and town, and the sewage was thus carried upon and over the town lands into a creek, creating a nuisance in the town dangerous to public health. Plaintiffs, constituting the Board of Health of the town, passed a resolution declaring that such discharge of sewage was a nuisance, ordered it to be suppressed and authorized the commencement of an action to restrain a violation of the resolution. A copy of the resolution was served upon the city by delivering it to the proper city authorities, the delivery being made in the city. The city, in violation of the order, continued the nuisance by permitting the sewage to be discharged as before. *Held,* that an action was maintainable to enforce the order and to restrain the continuance of the nuisance; that while the board could not go into the city and interfere with its sewers, it could enforce its orders and prevent the discharge of the sewage upon the lands of the town where it created a nuisance; that the order related to a matter within the town and within the jurisdiction of the board; also, that the city was, within the act, an occupant of the premises in the town on which the nuisance existed, and was properly served with notice; and that a continuance of the discharge of the sewage after service was a violation of the order.

*Regina* v. *Cotton* (1 El. & El. [Q. B.], 202), and *Reed* v. *People* (1 Park. C. R. 481), distinguished.

*Gould* v. *City of Rochester* (39 Hun, 79), reversed.

(Argued February 28, 1887; decided March 8, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of January, 1886, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term. (Reported below, 39 Hun, 79.)

This action was brought by plaintiffs as the Board of Health of the town of Brighton to restrain the defendant from discharging sewage upon and over lands of said town and to have such discharge adjudged to be a nuisance.

The material facts are stated in the opinion.

*Walter S. Hubbell* for appellants. The action was properly brought in the names of the individual members of the board,

with the corporate name of the board attached. (2 R. S. [7th ed.] 1081; *Haight* v. *Benson*, 18 How. 302; *Winchester* v. *McKee*, 4 Alb. L. J. 138; *Pomeroy* v. *Sperry*, 16 How. 211.) Whatever is detrimental to the health of the town may be the subject of the board of health's action. There is no limitation as to the character of the nuisances, nor as to the residence of the party causing the nuisance, nor as to the place where the nuisance originates. (*Mead* v. *Stratton*, 87 N. Y. 493, 496; *In re Will of O'Neil*, 91 id. 516; *People ex rel. Wood* v. *Lacombe*, 99 id. 43, 49.)

*Ivan Powers* for respondent. Local boards of health possess the power and can exercise the authority conferred upon them by the statute and none other. (*People* v. *Supervisors*, 18 Barb. 567, 569.) The act under which the Brighton Board of Health is organized confers upon local boards of health no power or authority with reference to the removal or suppression of a condition of things existing outside of the limits of the town, for which the local board acts, by reason of which nuisances are created within the limits of the town. (*Regina* v. *Cotton*, 102 Eng. Com. Law Rep. (1 El. & El.); 202; *Reed* v. *People*, 1 Park C. R. 481.)

ANDREWS, J. The city of Rochester adjoins on the east the town of Brighton. It constructed sewers which discharged into ditches near the boundary between the city and town, which carried the sewage upon and over lands in Brighton, and ultimately into Thomas creek, a small stream running through the town and having its outlet at Irondequoit bay. The ditches were constructed by the city under a general legislative authority to acquire land outside of the city limits, and open ditches thereon to carry off the drainage of the city. It is found that the discharge of the sewage through the ditches and into Thomas creek created a nuisance in the town of Brighton dangerous to the public health. On the 1st day of August, 1884, the plaintiffs, constituting the Board of Health of the town, enacted a rule or regulation prohibiting any person or corporation discharging or causing to be disharged

upon any of the lands, or into any of the streams of the town of Brighton, the contents of any sewer in which is drained the contents of any privy, water closet or urinal, under a penalty. On the same day the board passed a resolution declaring that the discharge of the sewage of the city of Rochester from the Monroe avenue sewer and the East avenue sewer upon lands in the town of Brighton, and from thence into Thomas creek, was a nuisance, the suppression and removal of which was necessary for the preservation of the public health, and ordering that the nuisance be suppressed and imposing a penalty for the violation of the regulation, and also authorizing the prosecution of any person or corporation violating the same, or the commencement of an action to restrain such violation, or otherwise to enforce the regulation. By direction of the board a copy of the regulation was posted in the town and served upon the city of Rochester, by there delivering it to the proper authorities of the city. It is sufficient to state, without entering into details, that the discharge of the filth from the sewers into the open ditches, and from them into Thomas creek, creates an offensive and dangerous nuisance. The sole question here presented is whether the Board of Health of the town of Brighton is authorized to maintain an action against the city to enforce its regulation and to restrain the continuance of the nuisance. It is clear that there is a remedy by indictment and also by civil action at the suit of persons sustaining special injury by the unlawful acts of the defendants. The right of the board of health of the town of Brighton to maintain the action is challenged, on the ground that it has no general capacity to sue, but only such as is specially conferred by the law under which boards of health are organized, and that the circumstances of this case do not bring it within the authority conferred. It would seem that an action by the body representing all the inhabitants of the town, invoking the equitable power of the court to restrain the continuance of a wrong so vitally affecting the interests both of individuals and of the public at large, would be most appropriate. But

it is undoubtedly true that the power to maintain the action, if it exists, must be found in the statute, and it is, therefore, necessary to ascertain what statutory powers are conferred upon boards of health, and whether they include an authority to maintain an action under the circumstances existing in this case.

The original statute (Chap. 324, Laws of 1850), " For the Preservation of the Public Health," and providing for the organization of health boards in cities, villages and towns, conferred upon such boards, among other things, the power to make and publish rules and regulations for the " suppression and removal of nuisances " (§ 3, subd. 3, 6), and prescribed a penalty for the willful violation of any regulation " so made and published." (Sec. 4.) But the act conferred no power upon boards of health to maintain any action to enforce their regulations, and it was held that actions could not be maintained by the board. (*People* v. *Supervisors of Monroe Co.*, 18 Barb. 567.) The powers of boards of health were, however, subsequently enlarged by amendments to the original act, and their powers as they now exist, are declared in the supplementary act, chapter 351, Laws of 1882. By the third section they are empowered " to make orders and regulations, in their discretion (among other things), for the suppression and removal of nuisances, and all such other orders and regulations as they shall think necessary and proper for the preservation of the public health," and to enter upon any place or premises where conditions dangerous to the public health are known or believed to exist, for the purpose of inspection, and also " to receive and examine into the nature of complaints made by any of the inhabitants concerning causes of danger or injury to the public health within the limits of its jurisdiction." Subdivision six of the same section confers the power and makes it the duty of boards of health " to publish from time to time all such orders and regulations of general obligation as they shall have made, in such manner as to secure early and full publicity thereto, and to make, without publication thereof,

such orders and regulations in special and individual cases, not of general application, as they may see fit, concerning the suppression and removal of nuisances, and concerning all other matter in their judgment detrimental to the public health, and to serve copies thereof upon any occupant or occupants of any premises whereon any such nuisance or other matters aforesaid shall exist, or by posting the same in some conspicuous place on such premises." The power of boards of health to impose penalties and to maintain actions is declared in subdivision nine as follows: " To impose penalties for the violation of or noncompliance with, their orders and regulations, and to maintain actions in any court of competent jurisdiction, to collect such penalties, not exceeding one hundred dollars in any one case, *or to restrain by injunction such violations, or otherwise to enforce such orders and regulations.*" The power to maintain an action for an injunction, given by subdivision 9, above quoted, is, as will be observed, auxiliary only. It is not a general power to maintain actions for the suppression or removal of nuisances. It is a right of action limited to the special purpose of enforcing orders made by the board, or to restrain their violation. It presupposes, therefore, as a condition of its exercise, the existence of a lawful order, duly made, which has been violated or disregarded. The courts below, while uniting in denying the right of the plaintiffs to maintain the action, differ in the grounds of their decision. The learned judge at Special Term, after asserting the proposition that the jurisdiction of the Board of Health of the town of Brighton over nuisances was limited to nuisances existing within the territorial limits of the town, put his decision upon the ground that the order or regulation of August 1, 1884, was ineffectual and in excess of the power conferred upon boards of health, because the nuisance in question was created and had its origin in the city of Rochester, and that the town board could make no valid regulation in respect thereto, because, in the language of the court, its powers " are confined to the abatement of nuisances within

the town, and the regulations they make have no force outside of the town lines." It seems to us that this is quite too narrow a view of the situation. It is undoubtedly true that the authorities of Brighton could not go into the city of Rochester and interfere with its sewers. But the collection of foul substances in the sewers was not the immediate cause of the nuisance. The immediate cause was the discharge by the city of the sewage after it was collected in the sewers, into open drains constructed by the city across lands in the town of Brighton. This discharge was prohibited by the order of August 1, 1884. The city, notwithstanding the order and in violation of it, continued the nuisance and permitted the sewers to discharge their contents as before, and it continued also to use the ditches it had constructed in the town, to carry the offensive matter to the creek. In respect to the East avenue sewer, the nuisance had its origin at Culver street, the dividing line between the city and town, where the sewer terminated. It seems to us that the order of the Board of Health related to a matter within the town and within the jurisdiction of the board. We agree with the Special Term that the board could not execute its order by going within the city to close the sewers, but the fact that it had no power to enforce a summary jurisdiction of this kind does not justify the conclusion that it could not invoke the action of the court to enforce in an orderly way, the abatement of the nuisance. The case of *Regina* v. *Cotton* (1 Ellis & El. [Q. B.] 202) arose under the Nuisance Removal Act (18 & 19 Vict. c. 121), and it was held that it did not authorize a summary proceeding before justices, at the instance of one parish, for the removal of a nuisance originating in another parish. The court (EARLE, J.) said: "It would be most dangerous to take away from the regular tribunals the investigation of such a question, often a most complicated and important one, and to transfer it to the jurisdiction of any two justices of the peace."

The General Term, as we understand its opinion, put its affirmance of the judgment on the ground that, under the act of 1882, it is a condition precedent to the right of a board

of health to maintain an action to restrain the violation of
or to enforce an order made by the board, that the order
should have been served on the defendant, and that service
under the act must be made within the territorial jurisdiction
of the board. The order in question was served on the
defendant by service on its proper officers within the city.
It was, therefore, held that such service was not a compliance
with the act, and was not a performance of the condition
precedent. We are unable to concur in this conclusion.
The order of August 1, 1884, was not a rule or regulation
of general obligation of which publication was required within
the first clause of section 3 subdivision 6, but was an order
made in a special and individual case, under the last clause of
the subdivision, which is to be served on the " occupant or occu-
pants " of the premises on which the nuisance exists, " or by
posting " the same on the premises. But the statute does
not in terms require the order to be served within the town
or jurisdiction where the nuisance exists, and we see no reason
for so construing it. It is not necessary to determine
whether the Board of Health of Brighton would have jurisdic-
tion if the nuisance complained of was merely consequential,
that is, if the nuisance having been created, and existing in
the city, affected injuriously by corrupting the air, or other-
wise the town of Brighton. But in this case the city of
Rochester constructed and controlled the ditches in the town
through which the sewage was carried, and used them for
its purposes. We think the city was, within the act, the
occupant of premises in the town on which the nuisance
existed, and was properly served with notice. The claim that
the city did no new act after the order was made, if material,
is not well founded in fact. It continued to discharge the
sewage in the town as before. If it had refrained from
using the sewers, the nuisance would have abated without
further action. The case of *Reed* v. *People* (1 Park. Crim.
Rep. 481) is not in point. That was an indictment for violat-
ing a regulation of a board of health, founded on the fourth
section of the act of 1850, before amendment, which made a

willful violation of a regulation "made and published" by a board of health, a misdemeanor. The regulation claimed in that case to have been violated had not been published, and this was a complete answer to the indictment. The court also expressed the opinion that service of notice upon a non-resident out of the jurisdiction, although he owned the premises on which the nuisance existed, followed by a mere omission to act thereunder, would not render him liable to indictment.

We think the judgment in this case should be reversed. The statute should have a liberal construction in aid of the beneficial purpose of its enactment. The objections to the maintenance of the action are quite technical, and ought not, we think, to prevail.

All concur.

Judgment reversed and new trial ordered.